Magistrate Judge Mary Alice Theiler

FILED ___ ENTERED
LODGED ___ RECEIVED

DEC 07 2009

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                DEPUTY

09-MJ-00587-CMP

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN LOREN BERARD, ) <br> ) <br> Defendant. ) <br> ) | CASE NO. MJ09-587 <br><br> COMPLAINT for VIOLATION <br><br> Title 21, U.S.C. <br> Sections 841(a), 841(b)(1)(B), and 846 |

BEFORE, MARY ALICE THEILER, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant, Special Agent G. Matthew Kenyon, being duly sworn states:

### COUNT ONE
(Conspiracy to Distribute Marijuana)

Beginning at a time unknown, but within the past five years, and continuing until on or about December 4, 2009, in King County, within the Western District of Washington, and elsewhere, JOHN LOREN BERARD, and others known and unknown, knowingly and intentionally conspired to distribute marijuana, a substance controlled under Schedule I, Title 21, United States Code, Section 812.

It is further alleged that this offense involved 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana.

COMPLAINT/ Berard - 1
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846.

### Facts in Support of Complaint

I, G. Matthew Kenyon, being duly sworn, depose and say:

### BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation. I have been employed with the FBI since July 2003 and am currently assigned to the Criminal Enterprise Squad of the FBI in Kansas City, Missouri. During my tenure with the FBI, I have served as both an Intelligence Analyst and a Special Agent. While working as an Intelligence Analyst, I was assigned to the American Criminal Enterprise, Violent Crimes Intelligence Unit at FBI Headquarters in Washington, DC where I was responsible for intelligence information concerning Mexican drug trafficking organizations and their interaction with US-based drug trafficking groups. In connection with my current official duties, I investigate criminal violations of the Controlled Substance Act as found in Titles 18 and 21 of the United States Codes. I have been working an investigation targeting a drug distribution organization connected with gang members and associates, the facts of which are set forth in this affidavit.

### FEDERAL OFFENSES

2. I believe that the information set forth below establishes probable cause to believe that JOHN LOREN BERARD has committed federal criminal violations, specifically conspiracy to distribute marijuana, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 846.

### FACTS

3. Based on my personal experience in this investigation and my review and analysis of reports provided to me by other FBI Special Agents, as well as officers and detectives of the Kansas City, Missouri, Police Department, and on the basis of other reliable information I have received, I am familiar with the facts of the investigation. On the basis of this familiarity, I allege the facts in this affidavit provide evidence indicating

COMPLAINT/ Berard - 2
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 846, exist
2 at the aforementioned property.

### CONFIDENTIAL SOURCE (CS1)

4. In October 2009 a confidential source, hereinafter referred to as "CS1," voluntarily approached the FBI and indicated he/she wanted to provide information regarding gang membership and a marijuana distribution network in Kansas City, Missouri. Other than a misdemeanor marijuana possession arrest in 2002, CS1 has no criminal history. Furthermore, there were no known investigations targeting CS1 before or at the time he/she approached the FBI. CS1 said he/she had been selling marijuana in the Kansas City, Missouri area for numerous years and no longer wanted to be involved in that lifestyle. CS1 provided information detailing many Kansas City Missouri gang members and their criminal histories. The information CS1 provided spanned many years. To date, all of this information has been deemed reliable.

5. CS1 also provided information regarding his/her marijuana supplier, who operated out of the Seattle, Washington area. CS1 said he/she knew this individual as "JL" or "John Love," but believed his name was John Berard, hereinafter referred to as "Berard." CS1 reported that he/she has purchased marijuana from Berard off and on since 2002. CS1 estimated that he/she has purchased between 1200 and 1500 pounds of marijuana from Berard since 2002. The price per pound ranged from $2,250 to $3,700. The last load CS1 received from Berard before his/her cooperation was September 2009.

6. CS1 indicated Berard occupied at least two properties in Washington. One was described as a loft apartment located in downtown Seattle near the Puget Sound. CS1 described the second place as a rural property on acreage with a gate surrounding the premises. CS1 said he/she believed the rural property was approximately two hours away from Seattle, Washington and he/she thought it was located just outside of Olympia, Washington. CS1 said he/she saw coupons on the refrigerator for businesses with a 360 area code. CS1 further noted that Berard operated a marijuana grow from the basement of the residence on this location. CS1 saw large quantities of U.S. currency at this

COMPLAINT/ Berard - 3
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

location which he/she believed were drug proceeds.

## CS1 DESCRIBES THE ORGANIZATION'S DELIVERY METHOD

7.      CS1 indicated that he/she received marijuana from Berard via delivery, but that Berard almost never delivered it himself. CS1 remembered one occasion late in 2007 in which Berard was present for a delivery. Other than that one occasion, Berard always sent a driver on his behalf to deliver to CS1. CS1 described the marijuana transactions as follows.

8.      Berard called CS1, indicated he wanted to send a delivery to Kansas City, provided an estimated marijuana weight amount to expect, and provided an estimated delivery date. The delivery date was usually several days to one week away from the initial call. As the estimated delivery date approached, Berard called CS1 with more specific details about when the delivery would commence. On the delivery date, Berard called CS1 and indicated the expected time for delivery. Right before the delivery took place, Berard's driver called CS1 directly to indicate he was close to the delivery location. Often Berard would call CS1 or the driver to confirm that everything was going as planned. At the time of the delivery, Berard's driver arrived in a rental vehicle at CS1's location with the marijuana. CS1 said the marijuana was often sealed and placed in cardboard boxes. The boxes had labels which read "kitchen" or "bedroom" and other common household room names to make it look like the boxes contained household goods. CS1 accepted the marijuana and provided the driver with vacuum sealed U.S. Currency, often in a duffle bag or briefcase. Berard often called CS1 during or after the delivery to make sure everything went as planned.

9.      CS1 believed Kansas City was one of multiple stops for Berard's driver because he/she often saw additional boxes (like the ones he/she received containing marijuana), duffle bags and or briefcases in the rental vehicle. When CS1 observed additional boxes in the rental, he/she surmised that his/her location was one of the first deliveries on the route. When CS1 observed duffle bags or briefcases and no additional boxes in the rental, he/she surmised that his/her location was the last delivery on the

COMPLAINT/ Berard - 4
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

route. CS1 indicated there were some instances in which the driver would deliver the marijuana and then return approximately one week later to pick up money on his return to Seattle. Based on this information and on conversations CS1 had with the driver, CS1 believed the driver also made stops in either Chicago or St. Louis.

**CURRENT ACTIVITY**

10.     On November 19, 2009, CS1 advised me that Berard had contacted him and wanted to do another delivery to Kansas City on or about November 22, 2009. On November 20, 2009, I located internet public-source residential records for a John Loren Berard of Seattle, Washington. There were several addresses, but none were identified as current, and none were for the locations we are seeking to search. The Seattle FBI Division provided me with Berard's Washington driver's license photo. A copy was shown to CS1 on November 19, 2009 and he/she positively identified the photo of John Berard as his/her marijuana supplier from Seattle, Washington. CS1 also said he thought Berard's birthday was June 11; records I located showed it as June 13. CS1 advised that he/she owes Berard approximately $100,000 and would have that ready to give to the driver. CS1 indicated there had been several drivers over the years, but the same person had been coming for the last several deliveries. CS1 said he/she knew this driver as Matt, but did not know his last name, and described him as a white, heavy-set male in his 30s, weighing approximately 225 pounds and standing approximately 6' 2" tall. CS1 was planning to be out of town starting on November 23, 2009. I advised CS1 to ignore Berard's calls until after he/she was out of town.

11.     On November 23, 2009 at 12:16 a.m., CS1 forwarded me the following text message he/she received from Berard's phone: "Hope ur ok. I'm ticked ur not answerin. leaving early in the mornin." At 12:17 a.m., CS1 forwarded me the following text message he/she received from Berard's phone: "Bro has been calling u. Im getting heated up u should have that cell glued 2 u. 2day! We r there!" Later on the same day, CS1 advised me that he/she called Berard. CS1 explained that he/she was out of town and would be back on or about November 28, 2009 to receive the delivery.

COMPLAINT/ Berard - 5
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   12.   On November 26, 2009, CS1 contacted me and advised he/she spoke to
2   Berard and he/she believed the delivery would commence on November 30, 2009. On
3   November 28, 2009, CS1 forwarded me the following text message he/she received from
4   Berard's phone: "K will c u in a day or 2 i think." On November 29, 2009, CS1
5   forwarded me the following text message he/she received from Berard's phone: "Looks
6   like will b there tues. Nite. Ill let u know 2morrow nite!"
7   13.   On December 1, 2009, CS1 forwarded me the following text message
8   he/she received from Berard's phone: "Lotta traffic. C u 4 lunch maqana (manana)!"
9   14.   On December 2, 2009, CS1 advised me that he/she had spoken with Berard
10  and he believed Matt LNU would arrive to CS1's location at approximately 12:00 p.m.
11  15.   On December 2, 2009 at approximately 11:00 a.m., I, along with other FBI
12  agents and detectives from the Kansas City, Missouri, Police Department, initiated a
13  surveillance in the vicinity of 849 East 109 Terrace, Kansas City, Missouri. Additionally,
14  a Kansas City, Missouri, undercover police officer was with CS1 at CS1's residence. The
15  following observations were made at the following noted times.

16                                    **ARREST OF COURIER**

17  16.   During the surveillance, the undercover officer called and reported that
18  Berard had just called CS1 and told CS1 that he was sending approximately 54 pounds of
19  marijuana and that it was going to cost approximately $162,000.
20  17.   At approximately 1:13 p.m., a Toyota Sienna mini van, Alaska license plate
21  FPJ-281 (registered to Hertz Rental, Anchorage, Alaska) pulled into the driveway at
22  849 East 109 Terrace. During this time, a Kansas City, Missouri, undercover police
23  officer observed Matt LNU deliver approximately 54 pounds of a green leafy substance to
24  CS1. The undercover officer also observed CS1 hand Matt LNU a briefcase containing
25  approximately $117,000 dollars.
26  18.   At approximately 1:40 p.m., the Toyota mini van left the property located at
27  849 East 109 Terrace and headed north on Campbell Street.
28  19.   At approximately 1:44 p.m., the Toyota mini van turned northwest bound

COMPLAINT/ Berard - 6
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

on Interstate 435.

20. At approximately 2:10 p.m., the Kansas City, Missouri, Police Department conducted a traffic stop on the Toyota mini van and took the driver, the vehicle's sole occupant, into custody. The driver was identified as Matthew David Olson, date of birth 7/4/1970. Olson is a white, heavy-set male, standing approximately 5' 10" and weighing approximately 240 pounds.

21. At the scene of the vehicle stop, FBI Agents and police detectives recovered $180,950 in cash, several cellular telephones, and other personal effects from the vehicle. At the same time, the undercover officer recovered the delivered packages. These packages were not weighed, but appeared to be consistent with a weight of 54 pounds, as Berard had promised, and contained a green leafy substance that later field-tested positive for the presence of marijuana from the residence located at 849 East 109 Terrace, Kansas City, Missouri.

**COURIER'S INFORMATION**

22. During an interview with Olson on the day of his arrest, Olson positively identified a photo of John Berard, date of birth 6/13/1974, as the guy for whom he was delivering marijuana and collecting cash payments. Olson indicated he had been delivering what he believed was marijuana and picking up cash for Berard since approximately August 2008. Olson estimated that he made approximately six trips from August 2008 to the present. When asked about the last delivery, Olson said he drove his personal truck to Berard's rural residence and Berard's mother drove Olson to Hertz car rental, where he picked up the aforementioned Toyota Sienna rental van. Olson then drove the van back to the rural property to pick up the marijuana. After picking up the marijuana and placing it in the rental van, Olson headed for Kansas City. Olson said he was supposed to deliver to the buyer in Kansas City before Thanksgiving, but the buyer was not in town so Olson went on to deliver loads in Chicago and Milwaukee and then came back to deliver in Kansas City on his return to Seattle. Olson also indicated that he knew of two other drivers for Berard. One was his uncle Brian Olson, and another was a

COMPLAINT/ Berard - 7
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Heather Darst. Olson had traveled with both to make deliveries, and thought they made trips on their own. One of their trips was to New York. FBI Seattle records show that Darst is suspected of trafficking in MDMA and is associated with the Banditos Outlaw Motorcycle Gang. Bandito national officers were successfully prosecuted in Western Washington three years ago for drug trafficking and firearm violations.

23. Both CI1 and Olson say they have seen marijuana in Berard's Seattle loft apartment. CI1 saw it in May 2009 when Berard showed him several pounds, which was his last time there. Olson said he has seen it in the apartment most times he was there, including his last visit in April 2009.

24. Olson said that he was on his way back to Seattle at the time of his arrest and that Berard was expecting Olson to be back in Seattle with the money no later than Saturday, December 5. Olson said Berard occupied two residences and that he always delivered the money to one of these addresses. Olson described the first residence as a loft located in downtown Seattle near the intersection of Alaskan Way and Pike. Olson described the second residence as a rural property located in Enumclaw, Washington. Olson indicated the property is on five acres with a gate surrounding it. Olson further noted that he has seen a marijuana grow in the basement of the residence and estimated that there were approximately 30 "big" marijuana plants growing in it. Olson said he never knows until the last minute where Berard will want Olson to deliver the money, but it usually depends on where Berard happens to be when Olson is coming into town with the money. Olson believes that Berard will likely want Olson to deliver the money to the rural property since Olson left his personal vehicle there. Olson also said that location is where he picked up the marijuana for this trip.

26. On December 4, 2009, Olson went with me and four other law enforcement officers to Enumclaw, Washington. We drove to the property located at the corner of 286th Ave. S.E. and S.E. 371st St. in Enumclaw, Washington. Olson positively identified the residence at this location as the location where Berard has provided Olson with marijuana for Olson to deliver, and where Berard has accepted cash from Olson upon his

COMPLAINT/ Berard - 8
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  return trips. The residence on the property is a one story wooden structure single family
2  dwelling; the exterior is reddish brown. There is a detached two stall garage, and a
3  storage shed also on the property. Both of these structures are close to the residence. The
4  property is surrounded by a wooden and wire fence. There was no house number visible
5  to us when viewing the property.
6        27.     On December 4, 2009, I and the other four law enforcement agents, and
7  Olson left Enumclaw and drove to Seattle. Olson directed us to the downtown loft
8  location. The address of the building 114 Alaskan Way South, Seattle, Washington. The
9  building is a multi-unit apartment complex. From the car, Olson pointed out an apartment
10 in the building located at 114 Alaskan Way South; specifically he pointed at a window
11 with plants, and said that was Berard's apartment. An law enforcement officer who
12 accompanied us went into the building at 114 Alaskan Way South, and went to the third
13 floor. He sketched an outline of the third floor of the building, and showed the sketch to
14 Olson. Olson identified apartment 302 as the apartment he has been in on numerous
15 occasions, where he has gone to meet Berard. Apartment 302 is located on the west side
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

COMPLAINT/ Berard - 9
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  of the apartment building on the third floor. The numbers 302 are clearly marked on the
2  outside of the door to the apartment.

```
of the apartment building on the third floor.  The numbers 302 are clearly marked on the
outside of the door to the apartment.
```

_____
G. MATTHEW KENYON, Special Agent
Federal Bureau of Investigation

Subscribed to and Sworn to before me this  4  day of December, 2009.

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

_____
~~BRIAN A. TSUCHIDA~~ Mary Alice Theiler
United States Magistrate Judge

COMPLAINT/ Berard - 10
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

COMPLAINT/ Berard - 10
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970